1

2

3

4                    **UNITED STATES DISTRICT COURT**
                         **DISTRICT OF NEVADA**
5

6

7  OSCAR RENTERIA and DENISE        )
   RENTERIA,individually and in their )
8  capacities as Co-Trustees of the )
   RENTERIA FAMILY TRUST,           )          3:11-cv-00534-ECR-CWH
9                                   )
        Plaintiffs,                 )
10                                  )
   vs.                              )          <u>Order</u>
11                                  )
   EUGENE CLEVELAND CANEPA, an      )
12 individual,                      )
                                    )
13      Defendant.                  )
                                    )
14 _____ )

15
        Now pending is a Motion for Judgment on the Pleadings (#11) by
16
   Plaintiffs, Oscar Renteria and Denise Renteria ("Plaintiffs"),
17
   individually and in their capacities as Co-Trustees of the Renteria
18
   Family Trust, against Defendant, Eugene Cleveland Canepa
19
   ("Defendant").
20
        The motion is ripe, and we now rule on it.
21

22
               **I. Factual and Procedural Background**
23
        Between September 20, 2006, and December 29, 2006, Plaintiffs,
24
   who are residents of Napa, California, issued a series of loans,
25
   evidenced by demand promissory notes, to an entity known as French
26
   Quarter, Inc. ("French Quarter") and its principal, Defendant, a
27
   resident of Nevada.  (Compl. ¶¶ 1-4 (#1).)  Both parties agree that
28

the aggregate principal amount on the loans was $845,000.  (Compl. ¶
4 (#1); Pls.' Mot. for J. on the Pleadings, Ex. 1 (#11).)  Both
parties further agree on the existence of the first four promissory
notes, with principal amounts of $100,000, $70,000, $100,000, and
$200,000, respectively.  (Compl. ¶ 4 (#1); Answer ¶ 4 (#8).)  Each
of the first four notes has an interest rate of 12% per annum.
Plaintiffs allege the existence a fifth promissory note with a
principal amount of $375,000 and a per annum interest rate of 10%,
(Compl. ¶ 4 (#1)), which Defendant denies.  (Answer ¶ 4 (#8).)
Plaintiffs provide copies of all five promissory notes, signed by
Defendant individually and by Defendant as President of French
Quarter.  (Compl. Exs. 1-5 (#1).)  Each note provides that Defendant
promises to pay Plaintiffs, on demand, the principal sum of the
notes along with the accrued interest charges, with all payment
going toward the accrued interest before the principal.  (Id.)  The
notes further stipulate that Defendant must pay a 5% late charge if
the notes are not timely paid as well as reasonable attorneys' fees
in the event that Plaintiffs are required to bring suit to collect
the money owed.  (Id.)

On April 9, 2007, Plaintiffs demanded that Defendant pay the
notes.  (Id. Ex. 6 (#1).)  Plaintiffs allege that Defendant failed
to pay the notes, amounting to a default under the notes' contracts
and triggering a total of $44,250.00 in late fees.  (Id. ¶ 8.)
Defendant denies these allegations.  (Answer ¶ 8 (#8).)

On August 3, 2007, French Quarter filed a voluntary petition
for relief under Chapter 11 of the Bankruptcy Code.  (Compl. ¶ 9
(#1).)  In August 2007, Plaintiffs, Defendant, French Quarter, and

2

others executed a settlement agreement resolving disputes between French Quarter, its creditors, and other parties. (Id. ¶ 10.) The settlement agreement gives Plaintiffs "an allowed unsecured claim against [French Quarter's estate] in the amount of $887,000 . . . without prejudice to [Plaintiffs] claiming any pre- or postpetition Interest and attorneys fees as allowed by the Bankruptcy Code." (Id. Ex. 7. pp.10-11)   The agreement further explains that "[t]he parties hereto agree, and [Defendant] further warrants and represents, that [Defendant] was a co-maker on [Plaintiffs' notes] in the amount of $845,000 and that these loans are valid and binding."  (Id.)  Finally, the agreement provides that "[Plaintiffs] expressly reserve[] all rights and claims against [Defendant] for the full balance of [Plaintiffs' notes] including without limitation, unpaid principal, interest and attorneys fees."  (Id.) The settlement was approved by the United States Bankruptcy Court for the District of Nevada on September 8, 2008.  (Id. Ex. 8.)

On November 30, 2008, Plaintiffs filed a post-settlement claim against French Quarter, seeking a total of $1,158,216.48 in principal charges, interest accrued through August 3, 2007, late charges up to that date, and attorneys' fees.  (Pls.' Mot. for J. on the Pleadings Ex. 1-A (#11).)  On September 30, 2009, Defendant filed an objection to Plaintiffs' claim against French Quarter, objecting to the amount of the attorneys' fees as well as the accrual of postpetition interest.  (Id. Ex. 1.)

In May 2010, the bankruptcy estate of French Quarter distributed $354,800 to Plaintiffs.  (Id. ¶ 16.)  Plaintiffs allege that they applied this amount to the notes, covering the accrued

3

1   interest up to May 2010 as well as $4,146.85 of the late fees,
2   leaving approximately $38,103.15 in late fees.  (Id. ¶ 16.)  The
3   interest accrued on the notes from May 2010 through July 2011 is
4   approximately $115,767.12.  (Id. ¶¶ 17-18.)  Plaintiffs allege that
5   Defendant owes Plaintiffs $1,003,017.70, reflecting the principal,
6   $845,000, the interest accrued from May 2010 through July 2011,
7   $115,767.12, remaining late fees, $38,103.15, and attorneys' fees,
8   $4,147.43.
9        Plaintiffs filed their Complaint (#1) on July 26th, 2011.
10  Defendant filed his Answer (#8) on September 19, 2011.  On October
11  12, 2011, Plaintiffs filed a Motion for Judgment on the Pleadings
12  (#11).  Defendant has failed to file an opposition.
13
14                 **II. Judgment on the Pleadings Standard**
15       After the pleadings are closed but within such time as not to
16  delay the trial, any party may move for judgment on the pleadings.
17  FED. R. CIV. P. 12(c).  "A judgment on the pleadings is properly
18  granted when, taking all the allegations in the pleadings as true,
19  the moving party is entitled to judgment as a matter of law."  Milne
20  ex rel. Coyne v. Stephen Slesinger, Inc., 430 F.3d 1036, 1042 (9th
21  Cir. 2005) (internal quotation marks omitted).
22       The standard applied on a Rule 12(c) motion is similar to that
23  standard which is applied on Rule 12(b)(6) motions.  See Dworkin v.
24  Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989).  As
25  with Rule 12(b)(6) motions, review on a motion pursuant to Rule
26  12(c) is normally limited to the pleadings.  See Lee v. City of
27  L.A., 250 F.3d 668, 688 (9th Cir. 2001).  The Court should assume
28                                  4

1  the allegations of the non-moving party to be true and construe them
2  in the light most favorable to the non-moving party, and the moving
3  party must clearly establish that no material issue of fact remains
4  to be resolved.  McGlinchey v. Shell Chem. Co., 845 F.2d 802, 810
5  (9th Cir. 1988).  Without more, "conclusory allegations . . . are
6  insufficient" to defeat a motion for judgment on the pleadings.  Id.

7       If the district court relies on materials outside the pleadings
8  in making its ruling, it must treat the motion to dismiss as one for
9  summary judgment and give the non-moving party an opportunity to
10  respond.  FED. R. CIV. P. 12(d); see United States v. Ritchie, 342
11  F.3d 903, 907 (9th Cir. 2003).  "A court may, however, consider
12  certain materials — documents attached to the complaint, documents
13  incorporated by reference in the complaint, or matters of judicial
14  notice — without converting the motion . . . into a motion for
15  summary judgment."  Ritchie, 342 F.3d at 908.

16

17                          **III. Discussion**

18            A. Breach of Contract

19       Plaintiffs seek damages for a breach of contract by Defendant.
20  "To succeed on a claim for breach of contract, the plaintiff must
21  show that a contractual relationship existed between it and the
22  defendant, and that the defendant materially breached a duty owed to
23  the plaintiff under the contract."  Chamani v. Mackay, 124 Nev.
24  1457, 238 P.3d 800, at *1 (Nev. 2008).  See also Brown v. Kinross
25  Gold U.S.A., Inc., 531 F. Supp.2d 1234, 1240 (D. Nev. 2008).

26       Defendant does not dispute the validity of the first four
27  promissory notes.  (Answer ¶ 4 (#8).)  Nor is the validity of the

28                                  5

bankruptcy settlement agreement in contention. (Id. ¶¶ 10-15.) Defendant denies the existence of the fifth promissory note. (Id. ¶ 4.)  However, Defendant admits the validity of a settlement agreement that states that he is responsible for $845,000 in loans, the aggregate total of all of the promissory notes detailed in Plaintiffs' Complaint, including the fifth note. (Compl. Ex. 7 pp.10-11 (#1).)  Moreover, Defendant has provided this court no reason to doubt the authenticity of the fifth promissory note attached to Plaintiffs' Complaint. (Id. Ex. 5.)  Defendant has made no plausible denial of the existence of a contract.

Defendant's denial of a breach of contract is similarly implausible.  Defendant denies that he failed to make any payments under the notes when they were first demanded, (Answer ¶ 8 (#8).), but, again, he admits the validity of a settlement stating that he is required to pay $845,000 plus accrued interest and attorneys' fees. (Id. ¶¶ 10-15.)  Additionally, in his objection to Plaintiff's post-settlement claim against French Quarter for the full principal under the notes plus accrued interest and attorneys' fees, Defendant fails to contest the principal amount of $845,000 and disputes only the attorneys' fees and interest accrued after the petition for bankruptcy. (Pls.' Mot. for J. on the Pleadings Ex. 1 (#11).)  Defendant also provides no evidence of any payment on his part.  In short, none of Defendant's allegations attempting to dismiss his contractual obligations rise above the level of "conclusory allegations." McGlinchey, 845 F.2d at 810.  This court therefore finds a breach by Defendant of the five promissory notes as well as the bankruptcy settlement agreement.

6

1                    B. Postpetition Interest

2         In his objection to Plaintiff's post-settlement claim against

3    French Quarter, (Id.), Defendant objects to the "post-interest"

4    claimed by Plaintiff, stating that such interest is "not provided

5    for by the Bankruptcy Code. (Id.) "Post-interest," interest that

6    accrues after a debtor has filed its petition for bankruptcy, is

7    limited by 11 U.S.C. § 502(b)(2), which prohibits courts from

8    allowing the accrual of postpetition interest upon objection by an

9    interested party.[1]

10        Nonetheless, this court has held that §502(b)(2) "applies only

11   to claims against the bankruptcy estate." In re Washington Group

12   Intern., Inc., 460 B.R. 280, 288 (D. Nev. 2011). Accord In re El

13   Paso Refining, Inc., 192 B.R. 144, 146 (W.D. Tex. 1996) ("Section

14   502(b)(2) only prevents unmatured interest from becoming an *allowed*

15   *claim* against the debtor's *estate* . . . the obligation to pay

16   interest vis-a-vis a guarantor is not tolled or eliminated by

17   operation of section 502(b)(2)"); Bruning v. United States, 376 U.S.

18   358, 362 n.4 (1964) (explaining that claims do not lose their

19   interest bearing quality during bankruptcy and that the rule against

20   postpetition interest is a rule of liquidation practice designed to

21   protect the interest of creditors, not a substantive law with a

22   policy of relieving a debtor from its interest obligations).

23   Because Defendant was not a debtor in French Quarter's bankruptcy

24   _____

25        [1]11 U.S.C. §502(b)(2) does not explicitly mention postpetition interest,
     instead referring to claims for "unmatured interest." However, "unmatured interest"
26   has been interpreted to mean interest that "was not yet due and payable at the time
     the debtor filed its bankruptcy petition," exactly the type of postpetition interest
27   Defendant contests before this court. In re Thrifty Oil Co., 249 B.R. 537, 543
     (S.D. Cal. 2000).

28                                      7

1  proceedings, §502(b)(2) is inapplicable to him, and he is liable for
2  the interest accrued during and after French Quarter's bankruptcy
3  proceedings.

4           C. Attorneys' Fees

5       Plaintiffs seek relief for a total of $1,003,017.70, with
6  $845,000 as the principal, $115,767.12 in accrued interest, and
7  $38,103.15 in remaining late fees, leaving a total of $4,147.43 for
8  attorneys' fees.  Under Nevada statutory law, parties are permitted
9  to contractually provide for reasonable attorneys' fees in the event
10 they are needed.  N.R.S. § 18.010(1), (4); In re Dinan, 448 B.R.
11 775, 785 (9th Cir. 2011).  Each promissory note between Plaintiffs
12 and Defendant provides that, upon default, Defendant will be liable
13 for reasonable attorneys' fees expended in collecting the money
14 owed.  (Compl. Exs. 1-5 (#1).)

15      In determining the reasonableness of attorneys' fees, a Nevada
16 district court is "tempered only by reason and fairness."
17 University of Nevada v. Tarkanian, 110 Nev. 581, 879 P.2d 1180, 1186
18 (Nev. 1994).  "The court is not limited to one specific approach;
19 its analysis may begin with any method rationally designed to
20 calculate a reasonable amount."  Shuette v. Beazer Homes Holdings
21 Corp., 121 Nev. 837, 124 P.3d 530, 549 (Nev. 2005).  Courts should,
22 however, consider the fees in light of certain factors, namely "the
23 advocate's professional qualities, the nature of the litigation, the
24 work performed, and the result."  Id. at 549.  See also Brunzell v.
25 Golden Gate Nat. Bank, 85 Nev. 345, 455 P.2d 31, 33 (Nev. 1969).

26      Plaintiffs' attorneys are known professionals in the state of
27 Nevada.  The case at bar is a routine breach of contract case that

28                                    8

appears to have involved minimal discovery for Plaintiffs'
attorneys.   Plaintiffs fail to provide any receipts or other
documents to account for the money requested for attorneys' fees.
The requested amount of attorney's fees, $4,147.43, 0.4 % of the
total relief requested, appears reasonable, especially in light of
the fact that Defendant has failed to provide any substantive
evidence as to why the attorneys' fees are unreasonable and has
failed to file a response to Plaintiffs' motion.   However, because
Plaintiffs have failed to attach any documentation supporting their
request for attorney's fees, we shall deny those fees at this time.
Plaintiffs may submit a separate motion for attorney's fees.

### D. Unjust Enrichment

Plaintiffs further seek relief under a theory of unjust
enrichment.   (Compl. ¶¶ 41-47 (#1).)   The elements of unjust
enrichment are "(1) an enrichment; (2) an impoverishment; (3) a
connection between the enrichment and the impoverishment; (4)
absence of justification for the enrichment and the
impoverishment[;] and (5) an absence of a remedy provided by law."
Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1009 (9th Cir. 2010)
(quoting Community Guardian Bank v. Hamlin, 182 Ariz. 627 P.2d 1005,
1008 (Ariz.App.1995)).   Plaintiffs have failed to allege that
Defendant has been enriched and Plaintiffs have been impoverished by
any amount exceeding the money accounted for under the breach of
contract theory.   Unjust enrichment is therefore inapplicable
because the damages sought under this theory are provided for by the
breach of contract remedy granted to Plaintiffs.

9

1            <u>E. Money Lent and Money Had and Received</u>

2     Plaintiffs seek relief under money lent and money had and

3 received theories.  (Compl. ¶¶ 28-40 (#1).)  Both theories are

4 common law remedies designed to provide relief for plaintiffs in the

5 absence of a written contract.  <u>See generally</u> <u>Williams v. Glasgow</u>, 1

6 Nev. 533, 536 (Nev. 1865) (holding that to qualify for relief under

7 a money lent theory, a plaintiff need only prove "indebtednesss for

8 money loaned at the defendant's request, the promise to pay, and the

9 refusal to do so"); <u>Kondas v. Washoe County Bank</u>, 51 Nev. 134, 271

10 P. 465, 466 (Nev. 1928) ("[a]n action for money had and received can

11 be maintained whenever one man has received or obtained the

12 possession of the money of another, which he ought in equity and

13 good conscience to pay over") (internal citations omitted).  Because

14 Plaintiffs are already entitled to recover the full contractual

15 amount under a breach of contract theory, these additional theories

16 are inapplicable.

17

18                     **IV. Conclusion**

19     Even construed in the light most favorable to Defendant, there

20 remain no genuine issues of material fact in this case.  This court

21 finds Defendant liable for damages for breach of contract on five

22 promissory notes owed to Plaintiffs in the amount of $998,870.27,

23 reflecting the principal, $845,000, the interest accrued from May

24 2010 through July 2011, $115,767.12, remaining late fees,

25 $38,103.15, without the requested attorneys' fees, $4,147.43.  As

26 Plaintiffs have obtained the full relief they are entitled to under

27 a breach of contract theory, Plaintiffs are not entitled to further

28

relief under theories of unjust enrichment, money lent, or money had and received.

   **IT IS, THEREFORE, HEREBY ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (#11) is GRANTED on the basis of breach of contract.  Plaintiff shall be awarded the full contractual amount of $845,000, plus $115,767.12 in interest accrued between May 2010 and July 2011, and $38,103.15 in late fees.

   **IT IS FURTHER ORDERED** that Plaintiffs may submit a Motion for Attorney's Fees in accordance with Rule 54.

   The Clerk shall enter the judgment accordingly.

DATED: July 3, 2012.

_Edward C. Reed._
_____
UNITED STATES DISTRICT JUDGE