1
2
3
4
5
6           **UNITED STATES DISTRICT COURT**

7                 **DISTRICT OF NEVADA**

8   OSCAR RENTERIA and DENISE                     )
    RENTERIA, individually and in their           )
9   capacities as Co-Trustees of the RENTERIA )        3:11-cv-00534-RCJ-CWH
    FAMILY TRUST,                                 )
10                                                 )
           Plaintiffs,                            )
11                                                 )          **ORDER**
         v.                                       )
12                                                 )
    EUGENE CLEVELAND CANEPA, an                   )
13  individual,                                    )
                                                   )
14         Defendant.                             )
                                                   )
15  _____ )

16         Currently before the Court are Plaintiffs' Motion for Attorney's Fees (#14), Motion for

17  Status Conference (#37), Motion to File Surreply (#40), and Defendant's Motion to Set Aside

18  Judgment (#31).

19                 **BACKGROUND**

20         Between September 20, 2006, and December 29, 2006, Plaintiffs Oscar Renteria and

21  Denise Renteria, individually and in their capacities as Co-Trustees of the Renteria Family

22  Trust, issued a series of loans, evidenced by demand promissory notes, to an entity known as

23  French Quarter, Inc. ("French Quarter") and its principal, Defendant Eugene Cleveland

24  Canepa. (Compl. ¶¶ 1-4 (#1).) Both parties agree that the aggregate principal amount on the

25  loans was $845,000.  (Compl. ¶ 4 (#1); Pls.' Mot. for J. on the Pleadings, Ex. 1 (#11).)

26  Plaintiffs provide copies of all five promissory notes, signed by Defendant individually and by

27  Defendant as President of French Quarter. (Compl. Exs. 1-5 (#1).) Each note provides that

28  Defendant promises to pay Plaintiffs, on demand, the principal sum of the notes along with the

    accrued interest charges, with all payment going toward the accrued interest before the

principal.  (*Id.*)  The notes further stipulate that Defendant must pay a 5% late charge if the notes are not timely paid as well as reasonable attorneys' fees in the event that Plaintiffs are required to bring suit to collect the money owed.  (*Id.*)

On April 9, 2007, Plaintiffs demanded that Defendant pay the notes.  (*Id.* Ex. 6 (#1).)  Plaintiffs allege that Defendant failed to pay the notes, amounting to a default under the notes' contracts and triggering a total of $44,250.00 in late fees.  (Id. ¶ 8.)  Defendant denies these allegations.  (Answer ¶ 8 (#8).)

On August 3, 2007, French Quarter filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  (Compl. ¶ 9 (#1).)  In August 2007, Plaintiffs, Defendant, French Quarter, and others executed a settlement agreement resolving disputes between French Quarter, its creditors, and other parties.  (*Id.* ¶ 10.)  The settlement agreement gives Plaintiffs "an allowed unsecured claim against [French Quarter's estate] in the amount of $887,000 . . . without prejudice to [Plaintiffs] claiming any pre- or postpetition Interest and attorneys fees as allowed by the Bankruptcy Code."  (*Id.* Ex. 7. pp.10-11)  The agreement further explains that "[t]he parties hereto agree, and [Defendant] further warrants and represents, that [Defendant] was a co-maker on [Plaintiffs' notes] in the amount of $845,000 and that these loans are valid and binding."  (*Id.*)  Finally, the agreement provides that "[Plaintiffs] expressly reserve[] all rights and claims against [Defendant] for the full balance of [Plaintiffs' notes] including without limitation, unpaid principal, interest and attorneys fees."  (*Id.*)  The settlement was approved by the United States Bankruptcy Court for the District of Nevada on September 8, 2008.  (*Id.* Ex. 8.)

On November 30, 2008, Plaintiffs filed a post-settlement claim against French Quarter, seeking a total of $1,158,216.48 in principal charges, interest accrued through August 3, 2007, late charges up to that date, and attorneys' fees.  (Pls.' Mot. for J. on the Pleadings Ex. 1-A (#11).)  On September 30, 2009, Defendant filed an objection to Plaintiffs' claim against French Quarter, objecting to the amount of the attorneys' fees as well as the accrual of postpetition interest.  (*Id.* Ex. 1.)

In May 2010, the bankruptcy estate of French Quarter distributed $354,800 to Plaintiffs.

(*Id.* ¶ 16.)  Plaintiffs allege that they applied this amount to the notes, covering the accrued interest up to May 2010 as well as $4,146.85 of the late fees, leaving approximately $38,103.15 in late fees.  (*Id.* ¶ 16.)  The interest accrued on the notes from May 2010 through July 2011 is approximately $115,767.12.  (*Id.* ¶¶ 17-18.)  Plaintiffs allege that Defendant owes Plaintiffs $1,003,017.70, reflecting the principal, $845,000, the interest accrued from May 2010 through July 2011, $115,767.12, remaining late fees, $38,103.15, and attorneys' fees, $4,147.43.

Plaintiffs filed their Complaint (#1) on July 26th, 2011.  Defendant filed his Answer (#8) on September 19, 2011.  On October 12, 2011, Plaintiffs filed a Motion for Judgment on the Pleadings (#11).  Defendant failed to oppose the Motion (#11).  On July 3, 2012, the Court entered an Order (#12) granting Plaintiffs' Motion for Judgment on the Pleadings (#11) on the basis of breach of contract, and judgment was entered.  Plaintiffs were awarded the full contractual amount of $845,000, plus $115,767.12 in interest accrued between May 2010 and July 2011, and $38,103.15 in late fees.

On July 17, 2012, Plaintiffs filed a Motion for Attorney's Fees (#14), which was unopposed.  On November 20, 2012, Defendant filed a Motion to Set Aside Judgment (#31).  On December 7, 2012, Plaintiffs opposed (#34) the Motion to Set Aside Judgment (#31).  On December 14, 2012, Defendant filed a reply (#35) in support of the Motion to Set Aside Judgment (#31).

**DISCUSSION**

**A. Motion to Set Aside Judgment (#31)**

Defendant requests that we set aside the Order (#12) and Judgment (#13) entered on July 3, 2012.  Defendant claims to have recently learned of new facts and circumstances warranting vacation of that Order (#12).  Specifically, Defendant argues that after reviewing the trial and deposition transcripts from a lawsuit in state court, *Peri v. Naples Polaris*, No. Cv08-02475, Defendant found that Mr. Renteria was paid a substantial sum out of the bankruptcy settlement agreement, which would have covered and was intended to cover the loans at issue in this case.

Defendant seeks relief under Federal Rule of Civil Procedure 60(b)(2) and 60(b)(6). Federal Rule of Civil Procedure 60(b)(2) provides that a court may relieve a party from a final judgment or order because of newly discovered evidence. FED. R. CIV. P. 60(b)(2).  Defendant must demonstrate that (1) the evidence constitutes "newly discovered evidence" under Rule 60(b); (2) Defendant exercised due diligence to discover the evidence; and (3) the newly discovered evidence must be of "such magnitude that production of it earlier would have been likely to change the disposition of the case." *Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003) (quoting *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., Inc.*, 833 F.2d 208, 211 (9th Cir. 1987)).   Federal Rule of Civil Procedure 60(b)(6) allows a court to set aside a judgment for "any other reason that justifies relief."  FED. R. CIV. P. 60(b)(6). Rule 60(b)(6) is "'used sparingly as an equitable remedy to prevent manifest injustice' and 'is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment.'" *Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1103 (9th Cir. 2006) (citations omitted).

Defendant's "newly discovered evidence" consists of vague testimony from 2009 made in *Peri v. Naples Polaris* that Defendant mischaracterizes.  For example, Defendant provides deposition testimony of Timothy A. Lukas stating that as part of the settlement, any individual claim to go after Canepa for "the notes" was waived.  (Mot. Set Aside Judgment, Ex. 2, Timothy A. Lukas Dep. at 130:13-20 (#31-2).)   The notes referred to in that deposition were notes between Canepa and other members of Naples Polaris, not Renteria.  (Opp. Ex. 11, Timothy A. Lukas Dep. at 131:7-15 (#34-11).)  Defendant attempts merely to confuse the Court with irrelevant evidence while ignoring the plain language of the settlement agreement, which provided that "Renteria shall have an allowed unsecured claim against the Estate in the amount of $887,000." (Opp. Ex. 4, Settlement Agreement at 10 (#34-4).)   The settlement agreement further provides that Renteria may seek full repayment of his allowed unsecured claim from French Quarter, Inc. and for the remainder from Defendant once certain conditions were met.  (*Id.* at 11.)  In addition, Renteria "expressly reserve[d] all rights and claims against [Defendant] for the full balance of the Renteria Notes including without limitation, unpaid

principal, interest, and attorneys fees." (*Id.*)  The agreement was approved by the Bankruptcy Court on September 8, 2008.

Following the approval of the bankruptcy settlement, Renteria filed his complaint in this matter, seeking payment related to the notes issued to Defendant and French Quarter, Inc. The Court granted Renteria's motion for judgment on the pleadings (#11), which was unopposed and well-supported by the pleadings and admissions contained in the answer. Defendant's "new evidence" does not require reversal of that Order.  The allegedly new evidence does not support a finding that the Court would have decided otherwise had that evidence been before the Court prior to the judgment.  Defendant's Motion to Set Aside Judgment (#31) must be denied.  Plaintiff's Motion to File Surreply (#40) to respond to allegedly new arguments and evidence contained in Defendant's reply (#35) shall be denied as moot.

**B. Motion for Attorney's Fees (#14)**

Plaintiffs filed a motion (#14) requesting attorney's fees in accordance with the terms of the promissory notes at issue in this case.  In 2006, Canepa and French Quarter, Inc. executed five demand promissory notes in favor of the Renteria Family Trust.  Each note contained a provision that:

> If default be made in the payment of any of the aforesaid installments, and collection be made by attorneys, the undersigned promises to pay the reasonable charges of such attorneys for such collection, whether made with or without suit.

(Compl. Ex. 1-5 (#1-1).)

The bankruptcy settlement agreement also included terms providing that Renteria had an allowed unsecured claim for the amount owed under the promissory notes, as well as prepetition attorney's fees.  The settlement agreement also reserved Renteria's "rights and claims against Canepa for the full balance of the Renteria Notes including without limitation, unpaid principal, interest and attorneys fees."  (Compl. Ex. 7 (#1-1).)

Under Nevada law, parties are permitted to contractually provide for attorney's fees. Nev. Rev. Stat. § 18.010.  Canepa did not file an opposition to the Motion for Attorney's Fees (#14), and the contractual terms of the promissory notes, which Canepa admitted to executing,

provide for the payment of attorney's fees incurred in collecting payments.  Therefore, the only issue is the reasonableness of the requested fees.

Pursuant to Local Rule 54–16, a motion for attorneys' fees must include a reasonable itemization and description of the work performed, an itemization of all the costs sought, and a brief summary of: (A) the results obtained and the amount involved, (B) the time and labor required, (C) the novelty and difficulty of the questions involved, (D) the skill and requisite to perform the legal service property, (E) preclusion of other employment by the attorney due to the acceptance of the case, (F) the customary fee, (G) whether the fee is fixed or contingent, (H) the time limitations imposed by the client or the circumstances, (I) the experience, reputation, and ability of the attorney(s), (J) the undesirability of the case, if any, (K) the nature and length of the professional relationship with the client, and (L) awards in similar cases. Nev. Loc. R. 54–16(b)(1), (2), (3)(A)-(L).

The local rule also requires that each motion "must be accompanied by an affidavit from the attorney responsible for the billings in the case authenticating the information contained in the motion and confirming that the bill has been reviewed and edited and that the fees and costs charged are reasonable." Nev. Loc. R. 54–16(c). The "[f]ailure to provide the information required by LR 54–16(b) and (c) in a motion for attorneys' fees constitutes a consent to the denial of the motion." Nev. Loc. R. 54–16(d).

In the Order granting the motion for judgment on the pleadings, the Court denied a request for attorney's fees because Plaintiffs failed to attach any documentation supporting their request for fees.  In this renewed motion for fees, Plaintiffs request $12,677.50 for fees incurred in collecting the amounts due under the promissory notes.  In support of the motion, Plaintiffs provide an itemization of the costs sought, and an affidavit by an attorney who reviewed the bill.  Plaintiffs seek fees for work related to drafting the complaint, communicating with clients, preparing the motion for a judgment on the pleadings, and other work related to bringing, maintaining, and ultimately prevailing in this action.  The total amount of time spent on the action is fifty-two (52) hours.  Plaintiffs do not provide the exact hourly rates used to calculate the fees requested.  It appears from the Court's calculations that Plaintiffs request

1   $415 per hour for work performed by Timothy A. Lukas, $235 per hour for work performed by

2   Stephan J. Hollandsworth, and $160 per hour for work performed by Cyndy L. Arnold.  The

3   hourly rates for each attorney and their experience level should have been provided by counsel

4   and not estimated by the Court.   Furthermore, Plaintiffs' motion includes only  summary

5   declarations concerning the reasonableness of the requested fees.  Rather than comparing

6   fees sought and granted in other cases in this area, Plaintiffs simply state that "the rates

7   charged are reasonable and consistent with the charges typically made by other law firms in

8   the Reno area with sizes, services, and reputations comparable to Holland & Hart LLP." (Decl.

9   Stephan J. Hollandsworth (#14-1).)  Other factors that should have been discussed in depth

10  are similarly cursorily dealt with, through declarations such as "[s]taffing of matters within the

11  case is done with the objective of providing the level of representation appropriate to the

12  significance, complexity, and difficulty of the particular matter."  (Mot. Attorney's Fees at 5

13  (#14).)  There is no information provided about the experience level of each of the attorneys

14  or staff whose hours are billed.  The declaration of Mr. Hollandsworth states that he is an

15  associate.   That is the extent of the information provided to the Court to determine the

16  reasonableness of the requested fees.

17          Determining an appropriate hourly rate is inherently difficult.  *Blum v. Stenson*, 465 U.S.

18  886, 896 n. 11 (1984).  "[C]ourts properly have required prevailing attorneys to justify the

19  reasonableness of the requested rate or rates."  *Id.*  The burden is on the party requesting the

20  fees "to produce satisfactory evidence–in addition to the attorney's own affidavits–that the

21  requested rates are in line with those prevailing in the community for similar services by

22  lawyers of reasonably comparable skill, experience, and reputation."  *Id.*  Based on the

23  information provided, the Court is unable to assess the appropriateness of the requested fees,

24  as the Court cannot determine the skill level and experience of the attorneys involved.  For that

25  reason, the motion for attorney's fees must be denied at this time.  Counsel will be given an

26  opportunity to file another motion accompanied by the appropriate documentation, and

27  Defendant may raise any objections to that motion.

28  ///

7

**MOTION FOR STATUS CONFERENCE (#37)**

Plaintiffs request that the Court hold a status conference to address why a writ of execution has not been issued.  Plaintiffs moved for a writ of execution on November 20, 2012.  Defendants filed the Motion to Set Aside Judgment (#31) on the same date.  The Court declines to hold a status conference on the issue at this time.

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that the Motion to Set Aside Judgment (#31) is **DENIED**.  The Motion to File Surreply (#40) is **DENIED** as moot.

IT IS FURTHER ORDERED that the Motion for Attorney's Fees (#14) is **DENIED**.  Plaintiffs may submit a renewed motion for fees with proper documentation within fourteen (14) days of the date of entry of this Order.

IT IS FURTHER ORDERED that the Motion for Status Conference (#37) is **DENIED**.

Dated this 5th day of March, 2013.

_____
United States District Judge